**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5859-17T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WAYNE GREENE,

    Defendant-Appellant.

_____

Submitted October 29, 2019 – Decided January 21, 2020

Before Judges Currier and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 09-09-0799.

Joseph E. Krakora, Public Defender, attorney for appellant (David Anthony Gies, Designated Counsel, on the briefs).

Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent (Timothy M. Ortolani, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Wayne Greene appeals from the denial of his petition for post-conviction relief (PCR), contending trial and appellate counsel were ineffective, and the PCR court improperly denied his petition without an evidentiary hearing. After a review of the contentions in light of the record, and applicable principles of law, we affirm.

In 2009, defendant and four co-defendants were charged in an indictment with first-degree murder, in violation of N.J.S.A. 2C:11-3(a)(1)-(2) (count one); fourth-degree unlawful possession of a weapon, in violation of N.J.S.A. 2C:39-5(d) (count two); third-degree possession of a weapon for an unlawful purpose, in violation of N.J.S.A. 2C:39-4(d) (count three); first-degree robbery, in violation of N.J.S.A. 2C:15-1 (count four); first-degree felony murder, in violation of N.J.S.A. 2C:11-3(a)(3) (count five); and first-degree bias intimidation, in violation of N.J.S.A. 2C:16-1(a)(3) (count six). Defendant was also charged with second-degree robbery, in violation of N.J.S.A. 2C:15-1 (count eight), and second-degree witness tampering, in violation of N.J.S.A. 2C:28-5 (count nine).

After a sixteen-day trial, defendant was found guilty of aggravated manslaughter, in violation of N.J.S.A. 2C:11-4(a), a lesser-included offense to count one, and of counts two, three, four, five and nine. He was found not guilty of count six. In October 2011, defendant was sentenced to thirty-five years in prison,

with a thirty-year period of parole ineligibility, on the felony murder conviction. Defendant was also sentenced to a consecutive term of ten years in prison on the witness tampering conviction.

On appeal, we affirmed the convictions and sentence but remanded for re-sentencing on count nine. State v. Greene, No. A-3387-11 (App. Div. Oct. 30, 2014) (slip op. at 2-3).[1]

At the trial, in addition to other witnesses, one of the co-defendants, and defendant's girlfriend, Maria, testified for the State. The co-defendant stated defendant and several others were targeting Hispanic people, intending to rob them on the night of these events. After one of the co-defendants struck the victim on the head with a baseball bat, defendant and others went through the victim's pockets, taking his wallet and leaving the victim dead in the street.

Maria left the country shortly after the murder. When she returned in 2008, she went to the police. She said defendant had called her several hours after the murder, crying and upset. Defendant told her he had gone "to work," but "they overdid it." She said this meant defendant along with several of his brothers and friends had robbed people. Maria reported that defendant told her

---

[1] On remand, defendant was sentenced to a six-year consecutive prison term on count nine.

A-5859-17T3

his friend had struck a Hispanic man in the head with a bat. After the man fell, defendant and several others went through the man's pockets, taking his wallet.

During the trial, Maria repeated the information she had given to the police. She also said she had several conversations with defendant and that he asked her to say she was with him on the night of the murder if he was arrested. She was frightened because defendant said he would know if she had talked to the police, because other than his family, she was the only person he had told about the murder.

Neither party obtained Maria's phone records. In his opening statement, defense counsel informed the jury that, other than Maria's testimony, there was no proof of any telephone conversation between defendant and Maria in the hours after the victim's death. During his cross-examination of Maria, defense counsel portrayed her as a jealous and bitter ex-girlfriend. Counsel also emphasized the State's failure to request Maria's telephone records.

During the cross-examination of the prosecution's lead investigator, Sergeant Jorge Jimenez, defense counsel questioned the lack of production by the State of any telephone records documenting the call between defendant and Maria. Jimenez stated he was told either by the phone company or an assisting investigator that phone records were no longer in existence when requested nine

or ten months after the calls. During his summation, defense counsel referred multiple times to the State's failure to produce these records.

Jimenez also stated that defendant was hiding in a closet when they found and arrested him. Defense counsel questioned this testimony during his cross-examination, noting it was not stated in any police report. Thereafter, the State attempted to introduce a report prepared by police officer W. Tyler which stated defendant was hiding in a closet prior to his arrest. The Tyler report had not been produced during discovery. When defendant objected to its use, the trial court barred the use of Tyler's report but permitted testimony as to the circumstances of the arrest from other police officers who were present at the time.

In April 2015, defendant filed a petition for PCR, and assigned counsel thereafter filed a brief.[2] Defendant argued that trial counsel was ineffective in failing to obtain and present Maria's phone records. He asserted that the phone records would have contradicted Maria's testimony that he called her and admitted involvement in the murder.

In his supplemental brief filed two years later, defendant produced records from a telephone number he claimed was his at the time of the murder. Defendant

---

[2] Defendant also filed a supplemental memorandum of law.

said the records were found at his grandmother's house, nearly six years after the trial. The records were for a number different than the one Maria provided to the police.

During oral argument on the PCR petition, counsel argued the telephone records indicated that Maria perjured herself when she testified at trial that defendant called her. In addition, defendant contended trial counsel should have requested a mistrial when the State proffered the not-previously-disclosed Tyler report.

On May 30, 2018, the PCR court issued a comprehensive fifty-five-page written decision, denying the petition. The court noted the extensive questioning of Maria by defense counsel regarding her jealousy about the relationship between defendant and his new girlfriend and referred to the inconsistencies in her testimony. Maria also admitted during cross-examination that the police never asked her for her phone records. In addition, counsel attacked Maria's credibility "at length" during summation. The court determined trial counsel made several tactical decisions in his questioning of Maria that did not amount to ineffective assistance of counsel.

In addressing defendant's contentions regarding his and Maria's phone records, the court noted trial counsel used the State's lack of production of the records to attack Maria's credibility on numerous occasions. In addition, the

court noted Jimenez's testimony that he was advised Maria's phone records did not exist at the time of trial. Because the records were not available to either party, defense counsel could not have been ineffective for failing to secure them.

Even if the records had been produced, the PCR court noted it would not have changed the outcome of the trial. As this court noted in the direct appeal, there was "overwhelming evidence" of defendant's guilt and "extensive circumstantial evidence of [his] involvement in the crimes." Greene, slip op. at 32. The PCR court opined that the jury could have convicted defendant solely on the co-defendant's testimony. That testimony was corroborated by a number of other witnesses.

In addressing defendant's assertion regarding the Tyler report, the court noted the report was damaging and not exculpatory to him. In addition, the trial court did not permit the State to use the report at trial. Therefore, the court concluded, defendant failed to "show how he was prejudiced by the State's failure to provide the report before his trial commenced." Furthermore, because the State did not call Tyler as a witness and the trial court barred his report, there were no grounds for a mistrial.

A-5859-17T3

Finally, the court stated defendant had not presented any specific arguments as to how appellate counsel was ineffective. To the contrary, counsel raised numerous issues as reflected in this court's opinion on direct appeal.

Defendant presents the following arguments:

> POINT I. THE FAILURE OF DEFENDANT'S TRIAL ATTORNEY TO INVESTIGATE OR OBTAIN THE TELEPHONE COMPANY'S RECORDS PERTAINING TO A CHIEF WITNESS WAS DEFICIENT WHERE DEFENDANT'S PARTICIPATION IN THE CRIME WAS DEPENDENT ON THE WITNESS'S TESTIMONY THAT DEFENDANT USED A PARTICULAR TELEPHONE NUMBER TO CONTACT HER.
>
> POINT II. DEFENDANT WAS UNDULY PREJUDICED BY HIS TRIAL ATTORNEY'S DEFICIENT PERFORMANCE WHERE HE SIMPLY RELIED ON THE CROSS-EXAMINATION OF A CHIEF WITNESS TO SHOW THAT THE TELEPHONE NUMBER SHE ALLEGED DEFENDANT USED TO CONTACT HER WAS NOT ASSIGNED TO HIM.
>
> POINT III. THE FAILURE OF DEFENDANT'S TRIAL ATTORNEY TO REQUEST A MISTRIAL WAS CONSTITUTIONALLY DEFICIENT WHERE HIS TRIAL STRATEGY CHANGED AFTER THE STATE'S LATE PRODUCTION OF A POLICE REPORT.
>
> POINT IV. THE PCR COURT ERRED BY DETERMINING AN EVIDENTIARY HEARING WAS NOT WARRANTED IN SPITE OF DEFENDANT'S PRIMA FACIE . . . SHOWING

8

[THAT] HIS TRIAL ATTORNEY OFFERED NO EXPLANATION WHY HE DID NOT SUBPOENA THE TELEPHONE COMPANY'S RECORDS PERTAINING TO A MATERIAL WITNESS WHERE DEFENDANT'S PARTICIPATION IN THE CRIME WAS DEPENDENT ON THE WITNESS'S TESTIMONY THAT HE USED A PARTICULAR TELEPHONE NUMBER TO CONTACT HER WHICH HE DENIED WAS ASSIGNED TO HIM.

POINT V. DEFENDANT'S APPELLATE COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR NOT ADDRESSING ON APPEAL THE TRIAL ATTORNEY'S FAILURE TO REQUEST A MISTRIAL.

The standard for determining whether trial counsel's performance was ineffective for purposes of the Sixth Amendment was formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984) and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). In order to prevail on a claim of ineffective assistance of counsel, defendant must meet the two-pronged test establishing both that: 1) counsel's performance was deficient and he or she made errors that were so egregious that counsel was not functioning effectively as guaranteed by the Sixth Amendment to the United States Constitution; and 2) the defect in performance prejudiced defendant's rights to a fair trial such that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687, 694.

9

We are satisfied from our review of the record that defendant failed to demonstrate trial and appellate counsel were ineffective under the <u>Strickland-Fritz</u> test, and we affirm substantially for the reasons expressed in the well-reasoned opinion of the trial court.

In addressing the phone record contentions, defendant failed to explain how Maria's records would have established the falsity of her testimony. To the contrary, trial counsel took advantage of the non-production to attack Maria's credibility in his opening and summation and during his cross-examination of her. Furthermore, Sergeant Jimenez testified that Maria's telephone records were sought shortly after she approached the police in September 2008, but they were unavailable. Therefore, trial counsel could not have been ineffective for failing to secure records that were not available.

In turning to the records defendant produced six years after the trial, they were of no probative value as they failed to establish that a telephone call did not take place between Maria and himself. As the PCR court noted, the records could only establish that a call was not placed to Maria from that specific telephone number. However, Maria testified that she used five different telephone numbers to communicate with defendant during the applicable time. Finally, the telephone records were in the possession of defendant's grandmother, who was present and

testified at defendant's trial. Therefore, defendant could have produced them at any point.

Even if defendant's or Maria's telephone records were introduced, we cannot discern the production would have changed the outcome. As we have previously stated, there was "overwhelming evidence" from which the jury could find defendant guilty.

Because defendant has not demonstrated a prima facie case of ineffective assistance of counsel, he was not entitled to an evidentiary hearing. Any remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5859-17T3